## William Hale v. Jacob Houghton.

The Board of Water Commissioners of Detroit do not exceed their powers in con. tracting themselves to furnish and put in water pipe on private property, in a case which they regard, in good faith, as a proper one for the exercise of their discretion in using means to prevent waste and ensure security.

So far as third persons are concerned, the superintendent and engineer is the proper medium of negociation with the Board. And if he exceed his authority, and make a contract which the Board repudiate, third persons are not to be injuriously affected thereby, or deprived of rights acquired in good faith by dealing with an agent upon whose authority they had a right to rely.

Where, therefore, the superintendent and engineer contracted in the name of the Board to put in water pipe upon private premises, and put the same in accordingly, and the Board refused to confirm the contract; *Held*, that such refusal did not take from the owner of the premises the right to the pipe, but amounted to an election on the part of the Board to look to the superintendent for payment, and the latter might sue and recover upon the contract in his own name.

*Heard May 30th.    Decided July 9th.*

Error to Wayne Circuit, where Houghton recovered judgment against Hale in assumpsit, for the value of certain water pipe, and materials and labor expended in introducing the same into the Russell House, in Detroit.

From the bill of exceptions it appears that during the year 1857, Houghton was superintendent and engineer of the Board of Water Commissioners for the city of Detroit: that to carry out the objects and purposes contemplated by the act under which they were organized, said Board owned and possessed sundry iron water pipes and other materials, and had in their employ laborers engaged in laying down said pipes in the streets, alleys, and other public grounds of the city; and that subject to the said Board, said property and laborers were under the custody, supervision and control, of the plaintiff, as their superintendent and engineer: that during the summer of 1857, Hale was the owner of the Russell House, upon which he was then making extensive repairs, additions and improvements: that he applied to plaintiff, on behalf of said Commissioners, but at the expense of Hale, to furnish

labor and materials for, and to superintend the work of laying down a main inlet pipe, to be connected in rear of said hotel with the large pipe which conducts the water supplied by said Board along a public alley in rear of said hotel, and to be laid down from thence into and through the basement for the general supply of said hotel; that the pipe required for this purpose was larger than was usually required for conducting upon private property the water supplied by the Board, and could not have been conveniently procured in Detroit, elsewhere than from the Board: that Houghton complied with his request, and with the laborers in the employ of and paid by said Board, among whom was one Moore, who was so employed by the year and paid an annual salary, and with materials which were the property of the Board, Houghton caused said work to be done: that when the job was completed, Houghton made out and presented to Hale an account of the same in the name of the Board, and demanded payment thereof, which was refused: that in all this matter Houghton assumed to act as the agent or officer of, and on behalf of, said Board, and Hale dealt with him in that capacity. The rule of the Board with respect to the duty and power of the superintendent and engineer was given in evidence, and proof made that the work was done and the materials furnished without the knowledge or assent of the Board, and that they had never since ratified or confirmed the doings of Houghton in the premises, but had refused so to do. On the other hand, evidence was adduced on the part of Hale, tending to prove, that at three different times prior to 1857 the materials of the Board had been used, and their laborers employed, in furnishing and laying down water pipes upon private property. It was shown that Houghton, since its creation, had control and superintendence of all work done by the Board or its employees, but there was no evidence to show by whom

these particular jobs had been directed or supervised, or whether or not they were done with the knowledge or as-sent of the Board, other than that it appeared that in each case payment for the work had been made to the secretary of the Board, and this appeared in the monthly reports made by him to the Board of said works. Evi-dence was also adduced tending to show, that these were the only instances in which the materials and labor had been used and employed upon private property, and that in each case the pipe required had been of unusual size for service pipe; that in other cases the operations of the Board had been confined to streets, lanes, and public squares, and other public property.

The Circuit Judge charged the jury: that the Board had no power to make the contract mentioned in the testi-mony, and, therefore, could not authorize any agent to make it for them; and that if the plaintiff had made the contract as their agent, and in their name, he was entitled to maintain a suit upon the contract, and recover in his own name. And he refused the request of defendant's counsel to charge that the materials mentioned in the ac-count sued for, being conceded to be the property of said Board, if the plaintiff had no authority to sell them he could not recover their value in this suit, without proof that he had in some way acquired title thereto: that in this case, his recovery would not bar the right of the Board to the property, or Hale's liability to them.

*Wm. Gray*, for plaintiff in error:

The Board had power to make the contract. And the proof was ample that they made it by a duly authorized agent.

But if not, the materials still belong to the Board. Hale has acquired no title, and has nothing to pay for:— *Story on Agency*, §§ 225, 226, 229. Even when the party contract-ing as agent is the real owner and principal, he will not

generally be allowed to sue in his own name:—5 *M. &
S.* 383, 388-9. And there is no case where a mere agent,
who sold the property without authority, in the name of
the real owner, has been permitted to recover: — 15 *M.
& W.* 359; 3 *E. L. & Eq.* 391.

*G. Andrews,* and *S. T. Douglass,* for defendant in error:

An agent may maintain an action for the value of goods
of his principal sold by him, whenever, the agent having
exceeded his authority, his principal repudiates the contract,
or the agent has in any other way, by his disposition of the
goods, rendered himself liable for their value to his princi-
pal: — *Smith Merc. Law,* 193; *Story on Agency,* §§ 393,
398; 3 *Rob. Pract.* 38; 2 *Cowp.* 805; 15 *M. & W.* 359;
3 *E. L. & Eq.* 391; 18 *E. L. & Eq.* 422; 5 *M. & S.*
383; 17 *Ala.* 115; 27 *Ala.* 215; 12 *East,* 225.

CAMPBELL J.:

It is claimed by the plaintiff in error, that he should not
be held responsible to the defendant in error for the articles
furnished, because, by reason of the want of power in the
defendant in error, no title passed to the articles in question·

Upon a careful examination of the charter of the Detroit
Water Commissioners, we think the Board had power to
make such a contract as that made by Houghton in their
name. In carrying out the duty of supplying water to the
city of Detroit, it was not contemplated that the Board
should enter into a general plumbing business; but a re-
gard to the safety of their works requires that they should
have some discretionary power, not only in supervising the
connections made by others, but, when large quantities of
water are likely to be used, in using means themselves to
prevent waste and ensure security. And we see nothing
in the charter to prevent [such work as that done in the
case before us, if regarded in good faith, by the proper au-
thorities, as a proper case for the exercise of such discretion.

And, so far as third persons are concerned, the superintendent and engineer is made by the regulations the proper medium of negotiation. The duties imposed upon the Board require constant attention, and it could never have been supposed that such a body, serving gratuitously, and appointed as business men and not as engineers, should devote their time daily to the details of such business. That work must fall upon agents, and the officer referred to is chosen to exercise a general supervision over the whole arrangements, subject, of course, to the control of the Board. And while, in the present case, he exceeded his instructions, and the Board had a right, which they exercised, to repudiate his acts, the effect of such repudiation could not injuriously affect third persons, or deprive them of rights obtained in good faith by dealing with an agent upon whose authority they had a right to rely. We do not think the Board can regard Mr. Hale as unlawfully in possession of the property in question, and the effect of their refusal to ratify Houghton's contract amounts, therefore, to an election to look to the latter for payment.

This being the case, Houghton became by this refusal fully empowered to sue in his own name for the labor and materials furnished. And although the charge, so far as concerned the authority of the Board, was erroneous, yet the error was not material, and ought not to cause a reversal of the judgment.

The judgment must be affirmed with costs.

The other Justices concurred.