No. 34,083

MARIETTA BAER LEIGH and THE AETNA BUILDING AND LOAN ASSOCIATION, *Appellants*, v. THE CITY OF WICHITA and EUGENE N. SMITH, *Appellees*.

(83 P. 2d 644)

Opinion filed November 5, 1938.

*John S. Dean, Jr., Mark L. Bennett*, both of Topeka, *A. V. Roberts, Benjamin F. Hegler, Roger P. Almond, Verne Roberts, V. J. Rogers, George McGill* and *Harry Castor*, all of Wichita, for the appellants.

*Vincent F. Hiebsch, K. W. Pringle* and *Forrest V. McCalley*, all of Wichita, for the appellees.

The opinion of the court was delivered by

SMITH, J.: This was an action to enjoin the city from a prosecution for violation of a city ordinance. The city answered and filed

a cross petition in which it prayed that the plaintiffs should be enjoined from a further violation of the ordinance. Judgment was for the city on the cross petition.

The ordinance in question is the zoning ordinance of the city of Wichita.

The petition alleged the formal matter as to the residence of the parties; that a complaint had been issued charging plaintiffs with maintaining a building in "A" residence district and using the building for an apartment building, when a building in that district could only be used for one- or two-family dwellings, or a church; that plaintiff Leigh was tried in police court, found guilty and fined and appealed to the district court; that the city was carrying on the prosecution under an ordinance which made each day a building was maintained in violation thereof a separate offense, and the city was threatening to proceed with such a prosecution; that the above ordinance was No. 11-197 and that on July 12 the above ordinance was repealed by the enactment of ordinance No. 11-791. The petition then described the property and alleged that a building was erected there in about 1889; that prior to 1920 it was arranged for and used as an apartment house; that it had been used for such purpose for many years, and was so used at the time the statute was enacted permitting cities to pass zoning ordinances; that plaintiffs had operated the building as an apartment house since about June, 1927, and that a mortgage on the property in question was given to the building and loan association, which is one of the plaintiffs in the action; that should the city be successful in its action the property of plaintiffs would be destroyed; that the city had attempted by the passage of the ordinance to prohibit the use of property in the district in question for apartment houses; that prior to the passage of the ordinance defendants neglected to have the property considered by the city planning commission; and did not by inquiry determine the proper use of the property in question. The petition further alleged that on or about the 15th day of May, 1929, plaintiff Leigh obtained from the city a permit to remodel the garage on the premises into residential quarters and that she did forthwith remodel the garage; that on account of the threatened prosecution plaintiffs were unable to repair the building; that the city and its officials actually knew and were bound to know that the building was being used as an apartment house over a long period of years and made no complaint that the law was being violated and were

estopped to contend at the time the action was instituted that the law was being violated, and that plaintiffs were entitled to an injunction restraining the city from changing or attempting to change the use of the property. The petition further alleged that the ordinances in question were regulatory in nature and there was no moral turpitude in the acts of which complaint was made; that the ordinance was unreasonable in its restriction upon the use of plaintiffs' property and its enforcement constituted a taking of the property of plaintiffs without due process of law; that it violated the constitution of the state, was in violation of the statute, and violated the constitution of the United States. The prayer was for an injunction enjoining the city officials from further prosecution of the action against plaintiffs.

Defendants filed an answer and cross petition. The answer made certain formal admissions and then alleged a general denial. The answer then alleged that the house in question was used as a private residence until long after the regional zoning ordinance of the city of Wichita was enacted. The answer further alleged that if the plaintiff, Marietta Leigh, obtained any building permit, as alleged in her petition, this permit did not give her any greater rights than were allowed to her under the ordinances of the city and the state statutes, and that nothing in this permit would bind the defendants. The answer then alleged the passage of the first zoning ordinance by the city on March 14, 1922, and that this ordinance classified the property as "A" residence, residential district, and that ever since that time it had been permissible to use it for residential purposes only, and that various zoning ordinances had been enacted since the enactment of the original and each of them had placed the property in question in "A" residential district; that any rights acquired by the plaintiffs in the property in question were acquired by them subject to the zoning ordinances; that the plaintiffs had willfully converted the property in question to use as an apartment house contrary to the ordinances of the city and the statutes of the state.

In their cross petition defendants alleged that the city was a city of the first class; that it had in effect since March 15, 1922, a zoning ordinance under the provisions of the statutes; that at the time plaintiffs were arrested ordinance No. 11-197 was in effect; that this ordinance was repealed on July 14, 1937, by ordinance No. 11-791; that ordinance No. 11-197 was in effect at the time plain-

tiff's petition was filed herein; reference was made to all the zoning ordinances of the city, and it was alleged that each one of these ordinances placed the property in question in "A" residence district; that the ordinance prohibited any building in the district being used as an apartment house; that notwithstanding this provision plaintiffs had for a number of months operated an apartment house on the property in question contrary to the provisions of the ordinance; that by reason of the operation of the apartment house, as alleged, plaintiffs were deteriorating the value of the other property surrounding the apartment house, and it constituted a nuisance under the provisions of G. S. 1935, 12-710; that under the provisions of the ordinance the operation of an apartment house at the location in question had, at all times while it had been operated as an apartment house, been in violation of the ordinances of the city, and each day's violation constituted a separate offense; that the apartment house so operated constituted a nuisance under the provisions of G. S. 1935, 12-710.

The prayer was for a judgment abating the nuisance and enjoining defendants from operating the property as an apartment house.

Upon trial the court made findings of fact substantially as follows: that plaintiff, Marietta Leigh, owned the house; that the plaintiff building and loan association had a mortgage on it; that it was built about 1889 as a two-story one-family residence; that there was a garage on the place with rooms on the second floor; that plaintiff Leigh purchased the property on June 11, 1927, for $5,000; that the original zoning ordinance of the city was passed in March, 1922; that this ordinance divided the city into zones according to a use map and provided that the property in question should be in "A" residence district; that in "A" residence district only the following kind of buildings were permitted:

"First: One-family dwellings. Second: Two-family dwellings. Third: Churches and temples. Fourth: Libraries. Fifth: Farming and truck gardening. Sixth: Schools and churches. Seventh: Accessory buildings incidental to the above uses and located on the same lot. . . ."

The court further found that the ordinance provided that it should not apply to existing structures nor to existing use of a building; that the original ordinance was changed from time to time, but the main features have remained in force and the property in question had remained in and was still in "A" residence district. The court further found that in 1929 plaintiff Leigh began remodeling the house to make apartments in it and also remodel the

garage to make two apartments over it; that on May 15, 1929, she obtained from the city a building permit. This permit was set out by the trial court in the findings. The portions with which we are interested are as follows:

"That, the estimated cost of said building is $600. The fee is computed on the building cost, and the amount due is $1.25.

"Should the cost of said building or any portion thereof exceed the above estimated cost, I agree to pay, upon completion of the building, the remainder of the fee properly due, after the final costs are ascertained.

"That the building is intended to be used for (Gar to Res & Gar) and will be ——— feet frontage and ——— feet in depth, —— stories in height, to be constructed of (frame) with a (shingle) roof."

The building inspector inspected the improvements made and said they were all right; that plaintiff continued operating the building as an apartment house and was so operating it at the time of this trial; that she had been arrested, tried and fined in police court and had appealed to the district court; that the ordinance under which she was prosecuted had been repealed and another one passed in its stead, but that the matter had been submitted to the court on the question of whether or not plaintiff Leigh was violating the zoning ordinance; that the average gross receipts from the property were $200 a month; that the use of the property as an apartment house was the most advantageous use to which the house could be put; that the reasonable value of the property was $4,500.

The court made the following conclusions of law:

"1. The plaintiffs are entitled to an injunction against the city of Wichita from prosecuting her for the violation of the ordinance, for the reason that the ordinance under which she was arrested has been repealed.

"2. The conducting and maintaining of an apartment house by the plaintiff, Marietta Leigh, at the location in question has at all times since March, 1922, been unlawful and has constituted a public nuisance.

"3. The plaintiffs and each of them are permanently enjoined from conducting or operating an apartment house of more than two apartments in the house on the premises in question."

On proper motion the findings and conclusions were amended so that the word "public" was stricken out of conclusion number 2. Finding of fact number 5 was amended, but not in such a manner as to have any effect on the outcome of this appeal. An additional finding of fact was made as follows:

"The use of the premises in question for apartment house purposes is detrimental to the surrounding neighborhood and materially decreases the value of the surrounding residence properties."

Judgment was entered according to the above findings and conclusions, the defendants were enjoined from further prosecution of plaintiff Leigh for violation of the ordinance and plaintiffs were enjoined from operating an apartment house of more than two apartments on the property. The appeal is from that judgment.

The first argument of plaintiffs is that the trial court did not have equity power to grant an injunction against the use of the property as an apartment house, since there was an adequate remedy at law. The penalty provided for a violation of the ordinance, and for each day's violation, is the adequate remedy upon which plaintiff relies.

The answer to this argument lies in G. S. 1935, 12-710. That section is part of the original statute providing for zoning ordinances. It reads as follows:

"Cities which shall hereafter pass ordinances under the provision of this act shall have power to declare the violation thereof a misdemeanor and punishable by a fine not to exceed five hundred dollars ($500) for each offense and to provide that each day's violation shall constitute a separate offense, and said cities shall further have the authority to maintain suits or actions in any court of competent jurisdiction for the purpose of enforcing the provision of such ordinance and to abate nuisances maintained in violation thereof."

It will be noted that the above section confers on cities which pass zoning ordinances the power not only to declare the violation of the ordinance a misdemeanor, but the authority to maintain actions to enforce the provisions of the above ordinance and to abate nuisances maintained in violation of the ordinance. The above provisions are sufficient to confer jurisdiction on the trial court to hear and determine an action such as this.

Plaintiffs argue with reference to this statute that it confers on the city authority to abate a nuisance, and nothing more. That is not the language of the statute. It provides for the bringing of an action to enforce the statute. Furthermore, the trial court in this case made a conclusion of law that the maintaining of this apartment house was in violation of the zoning ordinance and constituted a nuisance. Clearly it was such a violation the legislature had in mind when in the zoning statute it conferred on cities the authority to abate nuisances. The above would be controlling in this case even had the court not found as a matter of fact that the use of the property as an apartment house was detrimental to the surrounding neighborhood and materially decreased the value of the surrounding residence properties.

Plaintiffs next argue that the city is estopped from relying on the

violation of an ordinance that was adopted long after plaintiff Leigh started using the property in question as an apartment house as a basis for an injunction and also is estopped by the fact that the city building inspector had given plaintiff Leigh a building permit and the officers of the city had permitted her to use the property as an apartment house for a number of years and had made no complaint.

As to the latter argument, the building permit itself is of considerable interest. It will be noted that this permit only referred to the garage, not to the house itself. This record does not disclose that any permit was ever given to make the house into an apartment house. As to the argument that the city officials had permitted plaintiffs to operate the property as an apartment house without making any complaint, it is well settled that the failure of the proper official to see that a statute or ordinance is enforced does not excuse one accused of a violation from prosecution. See *Kelly v. Washington,* 302 U. S. 1, 58 S. Ct. 87, 82 L. Ed. 39. There the supreme court held: "A statute which has remained unenforced for a long period does not become inoperative for that reason." (Headnote 8.)

This court has held as follows:

"In a county's capacity as a governmental agency to collect and conserve the public revenues, estoppel based upon unauthorized acts of its officials cannot be successfully invoked against the county." (*Sedgwick County Comm'rs v. Conners,* 121 Kan. 105, syl. ¶ 3, 245 Pac. 1030.)

The authorities cited and relied on by plaintiff where estoppel had been held to go against a city have been where justice and right require it, as where positive acts of the city officials induced the action of the parties against whom the city is proceeding. An examination of the record has led us to the conclusion that we have no such a case as that here.

As to the argument that the city is estopped because the ordinance in effect when plaintiff first started to use the property as an apartment house has been repealed, we have examined the ordinances., They all contain like provisions except for creating the different districts. The ordinance in effect at the time of the arrest of plaintiff Leigh was number 11-197. Section 20 of this ordinance contained the following provision:

"The area and use of all buildings which were completed and occupied prior to the date of the first reading of this ordinance which shall have com-

plied with the ordinances then in effect shall be unaffected by the provisions of this ordinance."

Ordinance number 11-791 in effect when the case was tried contained the same provision. The effect of all this is that when each ordinance took effect its restriction could not apply to buildings as they were being used at that date, provided the use of the building at the effective date of the ordinance complied with the provisions of the ordinance then in effect. These provisions are of interest here because plaintiffs have never complied with the provisions of the ordinance at any time since this building was remodeled as an apartment house and used as such. On this account she cannot now be heard to say that she has a right to use this property as she was using it at the time the present ordinance became effective.

The above is an answer also to the argument of plaintiffs that the court had no right to enjoin future use, even though nonconforming when that use was in existence at the time the ordinance was adopted on the theory that the ordinance was prospective only in its application. This is also true of the argument that plaintiffs had obtained a prescriptive right to operate the property in violation of the ordinance.

The argument that the ordinance takes property without due process of law and is unreasonable, is directed at zoning ordinances and statutes in general. They have been upheld. (See *West v. City of Wichita,* 118 Kan. 265, 234 Pac. 978.)

The judgment of the trial court is affirmed.

ALLEN, J., dissenting.